Michael J. Malecek (State Bar No. 171034)
Email address: michael.malecek@kayescholer.com
Peter E. Root (State Bar No. 142348)
Email address: peter.root@kayescholer.com
Stephen C. Holmes (State Bar No. 200727)
Email address: Stephen.holmes@kayescholer.com
KAYE SCHOLER LLP
Two Palo Alto Square, Suite 400
3000 El Camino Real
Palo Alto, California 94306
Telephone:    (650) 319-4500
Facsimile:    (650) 319-4700

Attorneys for Defendants and
Counterclaim-Plaintiffs
SEQUENOM, INC. and SEQUENOM CENTER
FOR MOLECULAR MEDICINE, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERINATA HEALTH, INC., and THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>            Plaintiffs,<br>    v.<br><br>SEQUENOM, INC., and SEQUENOM CENTER FOR MOLECULAR MEDICINE, LLC,<br><br>            Defendants/<br>            Counterclaim-Plaintiffs,<br>    v.<br><br>VERINATA HEALTH, INC., and THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>            Counterclaim-Defendants,<br><br>        and<br><br>ISIS INNOVATION LIMITED,<br><br>            Nominal Counterclaim-<br>            Defendant. | Case No. 3:12-cv-00865-SI<br><br>**SEQUENOM, INC. AND SEQUENOM CENTER FOR MOLECULAR MEDICINE LLC'S OBJECTION TO THE TESTIMONY OF DR. STEPHEN A. BROWN** |

## OBJECTION TO TESTIMONY OF DR. STEPHEN BROWN

Defendants and Counterclaim-Plaintiffs Sequenom, Inc. and Sequenom Center for Molecular Medicine, LLC (collectively, "Sequenom") object to the testimony of Dr. Stephen A. Brown, who has been offered by Plaintiffs and Counterclaim-Defendants Verinata Health, Inc. and The Board of Trustees of the Leland Stanford Junior University (collectively, "Verinata") as a purported expert on claim construction.  Dr. Brown is unqualified to testify because:

> (1) he fails to satisfy even his own definition of a person of ordinary skill in the art, and
>
> (2) he lacks a basic understanding of fundamental concepts underlying massively parallel sequencing technology, a topic on which he provides extensive opinion testimony.

The Court should therefore reject Dr. Brown's expert testimony for being unreliable and unhelpful to the claim construction process.

In addition, the Court should reject Dr. Brown's rebuttal declaration for the further reason that it was tardy and prejudicial.  The "Rebuttal Declaration of Stephen A. Brown, M.D.," was served on March 1, 2013, more than three months after the stipulated November 21, 2012 deadline for exchange of expert declarations for claim construction, and less than three weeks before Dr. Brown's deposition.  (*see, e.g*., Dkt. 49 at 3; Dkt. 58 at 3).

## RELEVANT LAW

Expert testimony is considered extrinsic evidence for the purposes of claim construction.  *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  A court has full discretion to reject extrinsic evidence, including expert testimony, when such evidence is unhelpful to the claim construction process.  *Id*. at 981; *Phillips v. AWH Corp*., 415 F.3d 1303, 1319 (Fed. Cir. 2005).

Federal Rule of Evidence 702 allows opinion testimony only from a witness "who is qualified as an expert by knowledge, skill, experience, training or education," if the qualified expert's "scientific, technical, or other specialized knowledge" will help the court "understand the evidence or to determine a fact in issue."  Opinion testimony is admissible pursuant to Rule

1

702 only if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).[1]

## STATEMENT OF FACTS

The parties stipulated to exchange expert declarations to be used in claim construction by November 21, 2012. (Dkt. 49 at 3). On November 21, 2012, Verinata submitted a declaration from Dr. Brown as part of its disclosure of extrinsic evidence on construing Verinata's Patent Nos. 7,888,017 ("the '017 patent") and 8,008,018 ("the '018 patent). (Ex. 2[2], Brown Decl.). Dr. Brown is an Associate Professor in the Department of Obstetrics and Gynecology at the University of Vermont. (Ex. 2, Brown Decl. at ¶ 4). Although he purports to construe claims in both the '017 and '018 patents as requiring the use of massively parallel DNA sequencing platforms, Dr. Brown lacks any personal experience with the operation of massively parallel DNA sequencing ("MPS") platforms. (Ex. 1, Brown Dep. Tr. at 75:20-24). He has only "used massively parallel sequencing in the context of ordering clinical tests on patients" – a process wherein his involvement entails merely collecting a blood draw from a pregnant woman and sending it off to be tested, and involves no contact with or even observation of the sequencing technology. (*Id.*). He has never published on massively parallel DNA sequencing or the operation of MPS platforms, nor has he demonstrated that he has acquired any specialized knowledge in this field. (Ex. 1, Brown Dep. Tr. at 75:20-24; Ex. 3, Appendix A to Brown Decl.). Dr. Brown has no hands-on experience with, or requisite knowledge of, MPS technology that would enable him to understand the operation of massively parallel DNA sequencing platforms. Indeed, he fails to satisfy his own definition of a person of ordinary skill in the art.

---

[1] Although Rule 702 and *Daubert* traditionally apply to the admissibility of expert testimony offered to assist the trier of fact in understanding the evidence or issues of fact, and claim construction is purely a matter of law (not a factual determination) (*see Markman*, 52 F.3d at 977-78), the Rule 702 and *Daubert* analysis is likewise instructive for determining whether a proffered expert's testimony is useful for claim construction.

[2] All exhibits referenced as "Ex." are attached to the Declaration of Ross Allen.

Despite his lack of qualification, Dr. Brown offers expert opinion on the meaning of disputed claim language related to MPS platforms, including such terms as "massively parallel DNA sequencing of the random fragments of genomic DNA" and "massively parallel sequencing of DNA fragments randomly selected." (Ex. 2, Brown Decl. ¶¶ 17-40; Ex. 4, Brown Rebuttal Decl. ¶¶ 4-39).

Dr. Brown's lack of qualification contrasts sharply with Sequenom's expert, Dr. Michael Metzker, who is a Senior Manager at the Human Genome Sequencing Center at the Baylor College of Medicine and has extensive experience with the next-generation sequencing technology relevant to this case. (Ex. 5, Metzker Decl. at 1-2). In large part, Dr. Metzker's research has focused on developing next-generation sequencing. (*Id*.). Dr. Metzker has published extensively on massively parallel sequencing technologies since 2005, well before being retained as an expert in this case. (*See, e.g.,* Ex. 6, M. Metzker "Emerging technologies in DNA sequencing" *Genome Research* (2005) 15:1767; Ex. 7, M. Metzker, "Sequencing technologies – the next generation" *Nature Reviews Genetics* (2010) 11:31-46).

On March 1, 2013, Verinata served a "Rebuttal Declaration of Stephen A. Brown, M.D." (Ex. 4, Brown Rebuttal Decl.). This extensive declaration was 77 paragraphs long and included 16 new exhibits. This rebuttal declaration, which purported to criticize the opinions of Sequenom's expert, Dr. Metzker, relating to the meaning of the '017 and '018 claim terms, was served months after Dr. Metzker's declaration, and less than three weeks before Dr. Brown's own deposition in this case.

**ARGUMENT**

**A.   Dr. Brown is Not a Person of Ordinary Skill in the Art**

Even by his own standard, Dr. Brown is not a person of ordinary skill in the art of the '017 and '018 patents. In his opening declaration regarding claim construction, Dr. Brown states that "person would have . . . at least a master's degree or Ph.D. . . . , for instance as acquired by earning a medical degree and carrying out relevant research activities. One of ordinary skill in the art should understand both the operation and application of massively parallel DNA sequencing platforms." (Ex. 2, Brown Decl. at ¶ 15). Dr. Brown admits that he

3

has carried out "no research experiments" using massively parallel DNA sequencing. (Ex. 1, Brown Dep. Tr. at 75:20-24). Nothing in Dr. Brown's education, training or experience gives him an understanding of either the operation or application of massively parallel DNA sequencing platforms.

Dr. Brown admits that his experience with MPS is limited to "ordering clinical tests on patients." (Ex. 1, Brown Dep. Tr. at 75:20-24). "Ordering tests" provides him with no experience in the operation of massively parallel DNA sequencing platforms, and far from qualifies him as a person of ordinary skill in the art. Dr. Brown has not so much as witnessed first-hand the use of those platforms to conduct clinical tests, let alone conducted sequencing operations first hand. (Ex. 1, Brown Dep. Tr. at 75:20-24). Having never used, researched, or written on massively parallel DNA sequencing, Dr. Brown has no basis to provide opinion testimony on claim language relating to this technology. Lacking proper basis, Dr. Brown's opinions will not assist the Court in claim construction and, accordingly, the Court can and should reject his testimony. *See Markman*, 52 F.3d at 981.

Dr. Brown not only fails to qualify as a person skilled in the art, but also lacks qualification to testify as to what one of ordinary skill in this field would know. A person of ordinary skill in the art is a "hypothetical person" who is presumed to have complete knowledge of all pertinent prior art. *Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1363 (Fed. Cir. 2007). Yet, Dr. Brown testified that one of ordinary skill in the art would not need to understand the Braslavsky or Balasubramanian references to understand the '017 and '018 patents, and that one of ordinary skill in the art may not have been familiar with the Braslavsky reference in February of 2006. (Ex. 1, Brown Dep. Tr. at 56:22-57:19; 64:10-22; 66:14-18). Dr. Brown's view is remarkable, particularly because both of these references are cited in the specifications of the patents. (Ex. 8, '017 patent at 19:23:56, 20:10-13; Ex. 9, '018 patent at 19:14-47, 20:1-3). One of ordinary skill in the art must have an understanding of the references cited in the patent itself, particularly when details of those references are discussed in the specification. Lacking this understanding, Dr. Brown's testimony is not reliable, nor useful to the Court in the claim construction process.

4

### B. Dr. Brown Lacks a Fundamental Understanding of Massively Parallel DNA Sequencing

Dr. Brown demonstrates that he lacks fundamental understanding, let alone specialized knowledge, of basic underlying principles of massively parallel sequencing technology and the platforms that employ this technology.

For example, Dr. Brown's understanding of the sequencing methods that qualify as massively parallel DNA sequencing is contrary to accepted understanding in the field. At deposition, Dr. Brown testified that the category of "massively parallel DNA sequencing" includes Sanger sequencing. (Ex. 1, Brown Dep. Tr. at 12:25-13:14). Such a position is completely at odds with the scientific literature in the field of sequencing, which consistently describes massively parallel DNA sequencing as the next generation of sequencing, which came after, and is distinct from, Sanger sequencing.[3] It is particularly remarkable that Dr. Brown displayed such fundamental ignorance at his deposition, which occurred after he had ample opportunity to review the Metzker Declaration, which discusses the various technologies in detail at paragraphs 36-43. (Ex. 5).

When asked to identify the massively parallel DNA sequencing platforms with which

---

[3] *See, e.g.*, Ex. 10, E. Pettersson, et al., "Generations of sequencing technologies" *Genomics* (2009) 93:105-111 at 105 ("***Current massively parallel, state of the art systems are providing significantly improved throughput over Sanger systems***.") (emphasis added); Ex. 7, M. Metzker, "Sequencing technologies – the next generation" *Nature Reviews Genetics* (2010) 11:31-46 at 31 ("The automated ***Sanger method is considered as a 'first-generation' technology, and newer methods are referred to as next-generation sequencing*** (NGS). . . . The major advance offered by NGS is the ability to produce an enormous volume of data cheaply . . . ") (emphasis added); Ex. 13, R. Li, et al., "De novo assembly of human genomes with massively parallel short read sequencing" *Genome Res*. (2010) 20:265-272, at 265 ("The development and commercialization of next-generation ***massively parallel DNA sequencing technologies . . . have revolutionized genomic research. Compared to traditional Sanger capillary-based electrophoresis systems***, these new technologies provide ultrahigh throughput with two orders of magnitude lower unit data cost.") (emphasis added); Ex. 11, J.R. ten Bosch, W.W. Grody, "Keeping up with the next generation: Massively Parallel Sequencing in Clinical Diagnostics" *J. Mol. Diag*. (2008) 10(6): 484-492, at 484 ("The speed, accuracy, efficiency, and cost-effectiveness of DNA ***sequencing have been improving continuously since the initial derivation of the technique by*** Maxam and Gilbert and ***Sanger*** et al . . .***More recently, the advent of massively parallel sequencing*** has made the $100,000 genome a reality . . .") (emphasis added).

1   he is most familiar, Dr. Brown responded that he knew the most about Illumina sequencing
2   platforms. (Ex. 1, Brown Dep. Tr. at 18:24-19:5). Yet, Dr. Brown was not able to name *any* of
3   Illumina's sequencing products. (Ex. 1, Brown Dep. Tr. at 19:10-18).[4] This is akin to a
4   supposed expert on passenger jets saying he or she knows Boeing jets best, but cannot name a
5   single Boeing model.

6   At deposition, Dr. Brown admitted that he is not an expert even as to the basic elements
7   of next-generation or massively parallel sequencing. (Ex. 1, Brown Dep. Tr. 155:24-157:20).
8   When testifying as to the Illumina platform, he misapprehended basic elements, including
9   incorrectly testifying that the platform uses photobleaching, a laser-based technique used to
10  eliminate the fluorescent signal from successfully incorporated labeled nucleotides, between
11  cycles. (Ex. 1, Brown Dep. Tr. 41:12-42:10). In fact, the Illumina system uses a "proprietary
12  reversible terminator-based method" to remove the fluorescent signal from successfully
13  incorporated labeled nucleotides. (*See* http://www.illumina.com/technology/sequencing_
14  technology.ilmn). Dr. Brown's lack of knowledge of the Illumina platform – the system with
15  which he claims he is most familiar – underscores the unreliability of any opinions he offers
16  about the operation or application of these platforms. Dr. Brown lacks basic knowledge of
17  other massively parallel sequencing technologies as well, including pyrosequencing (Ex. 1,
18  Brown Dep. Tr. 22:3-12) and single molecule sequencing. (Ex. 1, Brown Dep. Tr. 43:22-44:9).
19  These are the most basic distinctions among next generation sequencers, as basic as whether a
20  car uses gasoline, diesel or electricity.

21  Dr. Brown also lacks a basic understanding of many references in his declarations. For
22  example, Dr. Brown cites to a total of fifteen references in his opening declaration, six of which
23  pertain to a sequencing method known as signature sequencing, not the massively parallel
24  random sequencing that Verinata claims is encompassed by the '017 and '018 patents. (Ex. 2,

---

[4] According to Illumina's website, Illumina carries only four sequencing products: (1) the HiSeq2500, (2) the HiSeq2000, (3) the Genome Analyzer IIx and (4) MiSeq. (*See* Illumina website at http://www.illumina.com/systems.ilmn).

Brown Decl. at ¶¶ 21, 37, 39; Exhs. 5, 7-10, 12).  At deposition, Dr. Brown was unable to recall even the basic principles underlying the signature sequencing method:

- When asked if signature sequencing uses sequencing by synthesis technology, Dr. Brown incorrectly answered in the affirmative.  (Ex. 1, Brown Dep. Tr. at 31:14-16).  Sequencing by synthesis is a concept explicitly mentioned in the '017 and '018 patents, in a portion of the specification to which Dr. Brown had repeatedly cited in his declaration.  (Ex. 8, '017 patent at 20:8; Ex. 9, '018 patent at 19:66; Ex. 2, Brown Decl. ¶¶ 17, 28, 45; Ex. 4, Brown Rebuttal Decl. ¶ 51).
- When asked if signature sequencing uses DNA polymerase, he again incorrectly answered that it does.  (Brown Dep. Tr. at 31:17-18).  As made clear by some of the very references that he cited in his declaration, signature sequencing uses the method of sequencing by ligation, not sequencing by synthesis, as well as DNA ligase and restriction enzymes, not DNA polymerase.  (*See* Ex. 12, Ex. 5 to Brown Decl. at 2).  These enzymes have fundamentally different properties, a basic point that is taught at the college level.

Dr. Brown supports his opinions regarding massively parallel DNA sequencing with references to signature sequencing without understanding the similarities and differences of the two technologies.  Accordingly, his opinions are unreliable, inaccurate and cannot be useful to the Court in claim construction.

**C.     Dr. Brown's Rebuttal Declaration Should Also Be Excluded as Untimely**

In addition to Dr. Brown's fundamental lack of qualification as an expert on the claim construction issues presented in this case, his rebuttal declaration is untimely.  Dr. Brown's 77-paragraph "rebuttal" declaration – along with 16 exhibits – was not submitted until March 1, 2013.  (*See* Ex. 2, Brown Decl.).  The deadline for exchange of expert declarations was November 21, 2012.  (*See, e.g.*, Dkt. 49 at 3; Dkt. 58 at 3).  The parties' stipulation made no provision for introducing "rebuttal" expert declarations beyond that date and accordingly, Dr. Metzker did not respond to Dr. Brown's declaration.  Dr. Brown's two declarations to Dr. Metzker's one significantly prejudices Sequenom.

Even if expert rebuttal declarations were permissible, Dr. Brown did not provide his second declaration until ***three months after*** Dr. Metzker provided his declaration, and less than three weeks before Dr. Brown's deposition, again prejudicing Sequenom.  *See* Fed. R. Civ. Proc. 26(a)(2)(D)(ii) (rebuttal testimony must be disclosed within 30 days of the other party's disclosure); *Mallinckrodt, Inc. v. Masimo Corp.,* 254 F. Supp. 2d 1140, 1156-58 (C.D. Cal. 2003) (Pfaelzer, J.) (granting motion to strike an untimely "rebuttal" claim construction expert declaration under either Rule 26 or Rule 16).  Because it was untimely and prejudicial, Dr. Brown's "rebuttal" declaration should be stricken.

## CONCLUSION

Dr. Brown does not qualify as a person of ordinary skill in the art of the '017 and '018 patents, and his testimony is unreliable and not useful to the Court.  In addition, his rebuttal declaration was untimely and prejudicial.  Consequently, the Court should reject Dr Brown's testimony in construing the claim terms of Verinata's patents.

Dated: July 3, 2013                                    Respectfully submitted,

                                                       By:   */s/ Michael J. Malecek*
                                                             Michael J. Malecek
                                                             Attorneys for Defendant and
                                                             Counterclaim-Plaintiffs Sequenom, Inc.
                                                             and Sequenom Center for Molecular
                                                             Medicine, LLC