# EXHIBIT 3

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARIA DIAGNOSTICS, INC.,

    Plaintiff,

vs.                        NO. 3:11-cv-06391-SI

SEQUENOM, INC.,

    Defendant/
    Counterclaim-Plaintiff,

vs.

ARIA DIAGNOSTICS, INC.,

    Counterclaim-Defendant,

vs.

ISIS INNOVATION LIMITED,

    Nominal Counterclaim-
    Defendant.
_____/

AND RELATED CASES.
_____/

VIDEOTAPED DEPOSITION OF MICHAEL L. METZKER, Ph.D.

PALO ALTO, CALIFORNIA

FRIDAY, MAY 31, 2013

BY:   ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR

     CSR LICENSE NO. 9830

Page 210

1   in 1997 with regard to the '540 patent as you've
2   defined the person know how to remove all or
3   substantially all nucleated and anucleated cell
4   populations from a blood sample?
5       A   Yes, they would know some of those
6   techniques.
7       Q   Is Mr. Reines back?
8           Going back to your definition of the person
9   of ordinary skill in the art with regard to the
10  '540 patent, I think we discussed earlier how that
11  might encompass an OB/GYN who did some sort of
12  prenatal diagnosis that was not genetic; correct?
13      A   I think we discussed that, yeah.
14      Q   And your view is that would be unusual, but
15  that would -- person would fall within the scope of
16  your definition?
17      A   Yes, although I think the person of ordinary
18  skill would be current with the literature.  I mean, I
19  think they would understand what is going on in the
20  field of prenatal diagnostics, and they're not just
21  working in a silo in some town in the United States
22  that really has no access to what the rest of the
23  world is doing.
24      Q   Would you add that characteristic of being
25  current with the literature to your definition of a

Page 211

1   person of ordinary skill in the art with regard to the
2   '540 patent?
3       A   Well, no.  I think --
4           MR. HOLMES:  Object to form.
5           THE WITNESS:  -- I think it's encompassed
6   within the definition of having practical experience.
7   I think the practical experience would require that
8   the person is knowledgeable in what's going on in the
9   field.
10          MR. SCHUCK:  Q.  Is it correct that you
11  believe that being aware of the literature, that is
12  inherent in your definition of a person of ordinary
13  skill in the art with regard to the '540 patent?
14      A   Yes.
15          MR. SCHUCK:  I have no further questions.
16  Thank you.
17
18              EXAMINATION BY MR. REINES
19          MR. REINES: Q.  Good afternoon.
20      A   Good afternoon, Ed.
21          MR. REINES:  Do you want to leave this
22  ambient, or should I attach it?
23          THE VIDEOGRAPHER:  You should attach it.
24  Thank you.
25          MR. REINES:  All right.

Page 212

1       Q   Starting where Mr. Schuck left off with
2   the -- your opinion of a person of ordinary skill in
3   the art, let me start -- let me start with your own
4   qualifications.
5           Prior to your involvement in this litigation
6   consulting retention, would you describe yourself as
7   having expertise in pre- -- prenatal diagnostics?
8       A   No.
9       Q   And do you believe that in order to be a
10  person skilled in the art, that it's a requirement to
11  have expertise in prenatal diagnostics?
12          And we're talking with respect to the
13  '540 patent.
14      A   Right.
15          And I -- I -- in my declaration I said as an
16  alternative, meaning that it wasn't a requirement, a
17  person of ordinary skill could also have two years'
18  practical experience in nucleic acids chemistry or DNA
19  sequencing.
20      Q   And your current research work, again,
21  outside this litigation, is it related to the study of
22  prenatal disorders in women or genetic disorders in
23  fetuses?
24      A   No.
25      Q   And you've never practiced medicine; is that

Page 213

1   correct?
2       A   That is correct.
3       Q   And you've never counseled expecting mothers
4   on development disorders; right?
5       A   That's correct.
6       Q   And you've not authored any scientific
7   articles on the detection of genetic defects in
8   pregnant women?
9       A   That is correct.
10      Q   And you've never authored any articles on the
11  detection of genetic disorders using cell-free fetal
12  nucleic acids or fetal cells in samples of maternal
13  blood; is that correct?
14      A   That is also correct.
15      Q   Okay.  Are you generally familiar with the
16  credentials of Dr. Feron?
17      A   No, I -- I am not.
18      Q   Do you know that he has expertise in nucleic
19  acid science?
20      A   I do believe I read that.
21      Q   Okay.  And you don't have any reason to
22  question that?
23      A   No.
24      Q   And why is it you believe that expertise in
25  prenatal diagnostics isn't a requirement to be skilled

Page 214

1  in the art of the '540 patent?
2    A  Because the '540 patent really talks about a
3  method or methods utilizing many genomic tools that I
4  use in my field, including the isolation of -- the
5  collection of blood and the isolation of cells, which
6  is what we do.  We don't look at plasma, extracting
7  DNA, amplifying DNA, detecting DNA and so forth.  So I
8  believe those are very relevant to the '540 patent.
9    Q  Yeah, I'm not -- it's not what is relevant;
10 it's what isn't relevant.
11       So why -- as I understand your testimony,
12 prenatal diagnostic expertise is not a requirement to
13 be a person skilled in the art; is that correct?
14   A  That's correct.
15   Q  Okay.  And why is it not a requirement?  Why
16 don't you need that expertise?
17   A  Okay.  I --
18       MR. HOLMES:  Objection; asked and answered.
19       THE WITNESS:  -- I thought I was answering
20 that.  It's because I believe that the '540 patent is
21 very molecular biology driven.  Taking blood,
22 isolating DNA, amplifying DNA, detecting DNA, those
23 are things we do in the field of molecular genetics or
24 molecular biology.
25       So I think because of that, there is not a

Page 215

1  requirement for a prenatal diagnostic background.
2       MR. REINES:  What number are we up to in
3  terms of exhibits?
4       THE REPORTER:  5.
5       MR. REINES:  Do you have the stickers?
6       THE REPORTER:  Here you go.
7       (Document marked Kellogg Exhibit 5
8        for identification.)
9       MR. REINES:  I'm going to show you what's
10 been marked as Exhibit 5, which is a brief of
11 Sequenom's.
12   Q  Do you generally recognize this Sequenom
13 brief?
14   A  Yes.
15   Q  Okay.  And you -- as part of your work in
16 this case, you've familiarized yourself with the
17 preliminary injunction record in this case?
18   A  Yes.
19   Q  And this is one of the documents that you
20 reviewed; is that correct?
21   A  I believe that's correct.
22   Q  All right.
23       Why don't you turn to page 3, please, of
24 the -- there's kind of two documents there.  If you
25 could --

Page 216

1    A  Is it Exhibit 1?
2    Q  There is a -- how do you describe it --
3  it's -- there is a -- it is an initial document.
4    A  Right.  It says Exhibit 1.
5    Q  And then -- yeah, Exhibit 1, yes.  That's
6  fine.
7    A  Okay.
8    Q  Okay.  Do you have page 3 of that?
9       And the heading on the top is:
10      "Ariosa's conventional argument relies on
11 Dr. Feron, who is not an expert in prenatal
12 diagnosis."
13   A  Yes, I see that.
14   Q  And do you see here that -- why don't you --
15 why don't you read the paragraph at lines 2 to 12 to
16 yourself.
17   A  Okay.  I've read it.
18   Q  Okay.  And so you understand the argument
19 that Sequenom was making there was that Dr. Feron was
20 unqualified to opine on the conventionality of the
21 recited steps of the claims of the '540 patent because
22 he didn't have expertise in prenatal diagnostics?
23   A  Yes, I see that.
24   Q  Okay.  And you disagree with that argument;
25 don't you?

Page 217

1    A  I -- I haven't formed an opinion whether I
2  agree or disagree with it.
3    Q  Well, you agree that prenatal diagnostics
4  isn't a requirement; correct?
5    A  Based -- based on my definition of one -- one
6  of ordinary skill in the art.
7    Q  Right.
8       There's no requirement for being -- having
9  expertise in prenatal diagnostics to be a person
10 skilled in the art?
11   A  I -- I don't see where it's referenced that
12 they're dis- -- disqualifying him because he's not a
13 person of ordinary skill in the art.
14   Q  But you'll agree with me that your -- your
15 position is that you don't need to have prenatal
16 diagnostic expertise at all to be a person skilled in
17 the art; correct?
18   A  I agree that you don't.  It's not a
19 requirement.
20   Q  Okay.  And in terms of how qualified you are
21 to opine on whether the steps of the '540 patent
22 claims are conventional or not, do you believe you're
23 qualified for that?
24   A  I haven't examined the issue of
25 conventionality.

55 (Pages 214 to 217)