IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERINATA HEALTH, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>SEQUENOM, INC., et al.,<br><br>　　　　　Defendants.<br>　　　　　　　　　　　　　　　／ | No. C 12-00865 SI<br><br>**ORDER:**<br><br>**(1) RE: DISCOVERY DISPUTES**<br><br>**(2) DENYING PLAINTIFFS' MOTION TO SEAL** |

　　　Two sets of discovery letters filed by plaintiffs Verinata Health, Inc. and the Board of Trustees of the Leland Stanford Junior University (collectively "Verinata") and defendants Sequenom, Inc. and Sequenom Center for Molecular Medicine, LLC (collectively "Sequenom") are now pending before the Court. Docket Nos. 190, 191-3, 196, 197. In the first set of letters, Verinata requests an order compelling Sequenom to produce all allegedly privileged correspondence related to the filing prosecution of the patent applications at issue in Interference No. 105,923. Docket No. 190 at 1. In the second set of letters, Verinata requests an order compelling Sequenom to produce all communications that Dr. Charles Cantor had with Sequenom's legal counsel regarding analyses of the patents-in-suit that Mr. Cantor performed and/or participated in during the time frame surrounding the issuance of these patents. Docket No. 191-3 at 1. For the foregoing reasons, the Court GRANTS Verinata's discovery requests.

## BACKGROUND

This is a patent infringement action. Verinata accuses Sequenom's Harmony™ Prenatal Test of infringing U.S. Patent No. 7,888,017 ("the '017 patent"), U.S. Patent No. 8,008,018 ("the '018 patent"), and U.S. Patent No. 8,195,415 ("the '415 patent").[1] Docket No. 34, First Amended Complaint.

## LEGAL STANDARD

"[P]re-trial discovery is ordinarily 'accorded a broad and liberal treatment.'" *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). "Parties may obtain discovery regarding any <u>nonprivileged</u> matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphasis added). A district court "has wide discretion in controlling discovery" and "will not be overturned unless there is a clear abuse of discretion." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

"The attorney-client privilege protects from disclosure confidential communications between a client and an attorney." *Theranos, Inc. v. Fuisz Techs. Ltd.*, No. C 11-5236 PSG, 2013 U.S. Dist. LEXIS 70564, at *3 (N.D. Cal. May 16, 2013). "The attorney-client privilege is intended 'to encourage clients to make full disclosure to their attorneys,' recognizing that sound advice 'depends upon the lawyer's being fully informed by the client.'" *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

The attorney-client privilege can be waived through an express or implied waiver. "An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (en banc). An implicit waiver occurs when the holder of the privilege asserts claims that the opposing party cannot adequately dispute unless it has access to the privileged materials. *See id.* Implied waivers are based on a fairness principle that "is often

---

[1] The present action is related to three other patent infringement actions before the Court: *Ariosa v. Sequenom*, 11-cv-6391; *Natera v. Sequenom*, 12-cv-132; and *Verinata v. Ariosa*, 12-cv-5501. Case Nos. 11-cv-6391 and 12-cv-132 are currently on appeal before the Federal Circuit.

2

expressed in terms of preventing a party from using the privilege as both a shield and a sword." *Id.*; *see also Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness."). When either privilege is waived, the scope of the waiver extends to "all communications on the same subject matter . . . so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Stanford v. Roche*, 237 F.R.D. 618, 625 (N.D. Cal. 2006).

Under Federal Rule of Evidence 502(a), when a disclosure "made in a federal proceeding . . . waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502. The party asserting the attorney-client privilege bears the burden of showing that it applies and that the privilege has not been waived. *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

### DISCUSSION

### I. The Interference Documents

Verinata requests an order compelling Sequenom to produce all allegedly privileged correspondence related to the filing and prosecution of the patent applications at issue in Interference No. 105,923. Docket No. 190 at 1. Verinata argues that the Chinese University of Hong Kong ("CUHK") waived any claim of privilege with respect to these documents, when Dr. Lo, a professor at CUHK, relied on the privileged documents during the interference proceedings. *Id.* at 1-2. In response, Sequenom argues that it does not possess the privilege and that it has disavowed using the Lo correspondence in these proceedings. Docket No. 196.

The parties do not dispute that Dr. Lo used the allegedly privileged documents offensively during the interference proceedings. This disclosure of the documents by CUHK's agent, Dr. Lo, to the PTO during the interference proceedings constitutes a waiver of the attorney-client privilege. *See Bittaker*, 331 F.3d at 719 ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making

3

the information public."); *Hergenroeder v. Travelers Prop. Cas. Ins. Co.*, 249 F.R.D. 595, 604 n.4 (E.D. Cal. 2008) ("[W]here the client allows its agent to produce privileged materials, the client is deemed to have waived the privilege."). In response, Sequenom first argues that it should not have to produce the documents because it is not the holder of privilege. Docket No. 196 at 1. Although Sequenom is correct that it is not the holder of the privilege, CUHK—the holder of the privilege—waived that privilege during the interference proceedings. Therefore, Sequenom may not rely on that privilege as a basis for refusing to produce the documents. *See Hergenroeder*, 249 F.R.D. at 604 n.4 ("Once a privilege is waived, it may no longer be asserted.").

Second, Sequenom argues that the waiver should not extend to undisclosed documents because Sequenom does not intend to use or rely upon the disclosed documents in this action. Docket No. 196 at 2. Generally, "[t]he disclosure of confidential information resulting in the waiver of the attorney-client privilege constitutes waiver of privilege as to communications relating to the subject matter that has been put at issue." *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, No. C 08-00863 MHP, 254 F.R.D. 568, 576 (N.D. Cal. 2008) (citing *Winbond Elecs. Corp. v. ITC*, 262 F.3d 1363, 1376 (Fed. Cir. 2001)). "'There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures.'" *Id.* Sequenom, as the party asserting the privilege, bears the "burden to show that fairness does not require waiver of the privilege over documents relating to the same subject matter as the documents disclosed." *Theranos*, 2013 U.S. Dist. LEXIS 70564, at *11. Here, Sequenom argues that it would be unfair to require it to produce undisclosed documents because it will not use or rely upon the disclosed documents in this action. In making this argument, Sequenom cites to *Theranos*, where the district court held that the party's failure to disavow any reliance on the disclosed documents was sufficient to justify disclosure of all remaining documents. *See* 2013 U.S. Dist. LEXIS 70564, at *13-14. In so holding, the *Theranos* court cited to *Wi-Lan, Inc. v. LG Elecs., Inc.*, No. C 10-80254 JF (PSG), 2013 U.S. Dist. LEXIS 26336, at *8-11 (N.D. Cal. Feb. 25, 2013) (citing *In re Von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987)), in which the district court held that where the disclosure of the privileged information is made extrajudicially and without prejudice to the opposing party and the disclosed documents are not used in the underlying

4

1 action, there is no need to broaden the waiver beyond those matters actually revealed. *See also Dukes*
2 *v. Wal-Mart Stores, Inc.*, No. 01-cv-2252 CRB (JSC), 2013 U.S. Dist. LEXIS 42740, at *27-28 (N.D.
3 Cal. Mar. 26, 2013) (holding the same). "The reason [for this rule] is that disclosures made in public
4 rather than in court—even if selective—create no risk of legal prejudice until put at issue in the
5 litigation by the privilege-holder." *Von Bulow*, 828 F.3d at 101. However, here, the holder of the
6 privilege, CUHK, waived the privilege by using the documents offensively during the interference
7 proceedings, which are quasi-judicial proceedings. *See Rex Chainbelt Inc. v. Borg-Warner Corp.*, 477
8 F.2d 481, 484 (7th Cir. 1973) (stating that inference proceedings are quasi-judicial in nature); *see also*
9 *Chamberlin v. Isen*, 779 F.2d 522, 524 (9th Cir. 1985) ("PTO employees perform a 'quasi-judicial'
10 function in examining patent applications."). Therefore, in fairness, the waiver should extend to
11 undisclosed documents relating to the same subject matter, regardless of whether Sequenom intends to
12 use or rely on the documents in this litigation. Accordingly, the Court grants Verinata's request and
13 orders Sequenom to produce all allegedly privileged correspondence related to the filing and prosecution
14 of the patent applications at issue in Interference No. 105,923.

16 **II.    The Cantor Analysis**

17 Verinata requests an order compelling Sequenom to produce all communications between Dr.
18 Cantor, Sequenom's former Chief Science Officer, and Sequenom's legal counsel regarding Dr.
19 Cantor's analyses of the patents-in-suit. Docket No. 191-3 at 1. Verinata argues that because Sequenom
20 intends to rely on Dr. Cantor's analyses at trial, it has waived any claim of privilege for documents
21 related to the analyses. *Id.* at 1-2. In response, Sequenom argues that because Dr. Cantor performed
22 the analyses by himself without the involvement of Sequenom's counsel, the analyses are not privileged
23 and there has been no waiver of privilege. Docket No. 197 at 1.

24 During his deposition, Dr. Cantor testified that he was likely asked to perform these analyses by
25 Sequenom's in-house counsel and that he also likely discussed his analyses with the in-house counsel.
26 *See* Docket No. 191-3. Further, Sequenom has represented that it intends to use and rely on Dr. Cantor's
27 analyses at trial to support its claims and defenses that the patents-in-suit are invalid. Docket No. 197
28 at 1. The Court concludes that in this situation Sequenom cannot rely on Dr. Cantor's analyses without

5

implicitly waiving the attorney-client privilege for communications related to the analyses. An implicit waiver occurs when the holder of the privilege asserts claims that the opposing party cannot adequately dispute unless it has access to the privileged materials. *See Bittaker*, 331 F.3d at 719. If Sequenom chooses to rely on Dr. Cantor's analyses as part of its invalidity claims and defenses, then Verinata cannot adequately dispute the contents of the analyses unless it has access to all communication made by or considered by Dr. Cantor that are related to the analyses, including privileged communications. Otherwise, Sequenom would be able to impermissibly use Dr. Cantor's analyses as a "sword" while attempting to use the attorney-client privilege to "shield" away any potentially negative communications Dr. Cantor may have had with Sequenom's counsel. Indeed, several courts within the Ninth Circuit have held that where a party seeks to rely on the testimony of a hybrid fact and expert witness, such as an expert employee, that party waives all applicable privileges and protections for items the witness considered that relate to the topics of his testimony, including communications between the witness and counsel. *See, e.g.*, *PacifiCorp v. Northwest Pipeline GP*, 879 F. Supp. 2d 1171, 1212-14 (D. Or. 2012); *United States v. Sierra Pac. Indus.*, No. CIV S-09-2445 KJM EFB, 2011 U.S. Dist. LEXIS 60372, at *32-34 (E.D. Cal. May 26, 2011) ("These type of witnesses are hybrid fact and expert opinion witnesses. While it is desirable that any testifying expert's opinion be untainted by attorneys' opinions and theories, it is even more important that a witness who is testifying regarding his own personal knowledge of facts be unbiased. Therefore, at least in some cases, discovery should be permitted into such witnesses' communications with attorneys, in order to prevent, or at any rate expose, attorney-caused bias."). Accordingly, the Court grants Verinata's request and orders Sequenom to produce all documents generated or seen by Dr. Cantor that relate to his analyses of the patents-in-suit, including communications between Dr. Cantor and Sequenom's legal counsel, unless Sequenom disavows use of the Cantor analyses in the present action.

### III. Verinata's Motion to Seal

On May 30, 2013, Verinata filed a motion to seal portions of its discovery letter regarding the Cantor analyses. Docket No. 191. In the motion, Verinata states that it moved to file the portions under

seal because the portions had been designated as "Outside Attorneys' Eyes Only" by Sequenom pursuant to the protective order in this matter. *Id.*

Under Civil Local Rule 79-5(e), where "the Submitting Party is seeking to file under seal a document designated as confidential by the opposing party or a non-party pursuant to a protective order . . . [,] [w]ithin 4 days of the filing of the Administrative Motion to File Under Seal, the Designating Party must file a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable." To date, Sequenom has not filed the required declaration. Accordingly, the Court DENIES Verinata's motion to seal. Verinata must publicly file an unredacted version of the discovery letter within the time frame mandated by Civil Local Rule 79-5(e)(2).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Verinata's discovery requests.[2] Sequenom is ORDERED to produce all allegedly privileged correspondence related to the filing and prosecution of the patent applications at issue in Interference No. 105,923. Sequenom is also ORDERED to produce all documents generated or seen by Dr. Cantor that relate to his analyses of the patents-in-suit, including communications between Dr. Cantor and Sequenom's legal counsel, unless Sequenom disavows use of the Cantor analyses in the present action. In addition, the Court DENIES Verinata's motion to seal. This Order resolves Docket Nos. 190, 191.

**IT IS SO ORDERED.**

Dated: June 10, 2014

SUSAN ILLSTON
United States District Judge

---

[2] In its discovery letters, Sequenom requests a hearing on the matter if the Court is included to grant Verinata any relief. Docket No. 196 at 2. The Court concludes that these matters can be resolved on the papers and denies Sequenom's request for a hearing.

7