United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERINATA HEALTH, INC., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>SEQUENOM, INC., et al.,<br><br>    Defendants.<br>_____ / | No. C 12-00865 SI<br><br>**ORDER GRANTING CUHK'S MOTION FOR RECONSIDERATION** |

A motion by defendant the Chinese University of Hong Kong ("CUHK") for reconsideration of the Court's June 10, 2014 discovery order is currently scheduled for a hearing on August 22, 2014. Docket No. 207. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court GRANTS CUHK's motion for reconsideration.

**BACKGROUND**

This is a patent infringement action. Verinata Health, Inc. and the Board of Trustees of the Leland Stanford Junior University (collectively "Verinata") accuse defendants Sequenom, Inc. and Sequenom Center for Molecular Medicine, LLC (collectively "Sequenom")'s Harmony™ Prenatal Test of infringing U.S. Patent No. 7,888,017 ("the '017 patent"), U.S. Patent No. 8,008,018 ("the '018 patent"), and U.S. Patent No. 8,195,415 ("the '415 patent").[1] Docket No. 186, First Supp. Compl. ¶¶

---

[1] The present action is related to three other patent infringement actions before the Court: *Ariosa v. Sequenom*, 11-cv-6391; *Natera v. Sequenom*, 12-cv-132; and *Verinata v. Ariosa*, 12-cv-5501. Case Nos. 11-cv-6391 and 12-cv-132 are currently on appeal before the Federal Circuit.

1  54-83. In addition, plaintiffs allege claims against CUHK pursuant to 35 U.S.C. § 146, seeking review
2  and reversal of the Board of Patent Appeals and Interferences's decisions and judgments in Interference
3  Nos. 105,920, 105,923, and 105,924, which held that the claims of the '018 patent lack a sufficient
4  written description as required by 35 U.S.C. § 112(a). *Id.* ¶¶ 2, 32, 43, 52, 84-101.

5  On May 20, 2014, Verinata filed its first supplemental complaint, adding CUHK as a defendant
6  in the action. Docket No. 186. On May 30, 2014, Verinata filed a non-joint discovery letter requesting
7  an order compelling Sequenom to produce all allegedly privileged correspondence related to the filing
8  and prosecution of the patent applications at issue in Interference No. 105,923. Docket No. 190. On
9  June 2, 2014, the Court ordered Sequenom to file a response to Verinata's request by Friday, June 6,
10 2014. Docket No. 193. On June 5, 2014, Sequenom filed its portion of the discovery letter arguing that
11 Verinata's request should be denied.[2] Docket No. 196. On June 10, 2014, the Court issued an order
12 granting Verinata's request and ordering Sequenom "to produce all allegedly privileged correspondence
13 related to the filing and prosecution of the patent applications at issue in Interference No. 105,923."
14 Docket No. 200.

15 CUHK was served with the first supplement complaint and summons effective June 12, 2014.
16 Docket No. 203. By the present motion, CUHK moves for reconsideration of the Court's June 10, 2014
17 discovery order. Docket No. 207, Def.'s Mot.

18

19                                    **DISCUSSION**
20 **I.    Motion for Reconsideration**
21       **A.    Legal Standard**
22 A district court has inherent jurisdiction to modify, alter, or revoke a prior order. *United States*
23 *v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). "Reconsideration [of a prior order] is appropriate if the
24 district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial
25 decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist.*

---

[2] In its response, Sequenom provided two grounds for denial of Verinata's discovery request: "(1) The privilege in the documents that Plaintiffs seek disclosure of belongs not to Sequenom, but to the Chinese University of Hong Kong ('CUHK'). (2) Sequenom has expressly disavowed use and reliance upon the 'Lo Correspondence' that Plaintiffs refer to." Docket No. 196 at 1.

2

1  *No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Reconsideration should be used
2  conservatively, because it is an "extraordinary remedy, to be used sparingly in the interests of finality
3  and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *see also*
4  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) ("'[A]
5  motion for reconsideration should not be granted, absent highly unusual circumstances . . . .'"). A
6  motion for reconsideration "'may not be used to relitigate old matters, or to raise arguments or present
7  evidence that could have been raised prior'" in the litigation. *Exxon Shipping Co. v. Baker*, 554 U.S.
8  471, 485 n.5 (2008); *see also Marlyn Nutraceuticals*, 571 F.3d at 880 ("A motion for reconsideration
9  'may not be used to raise arguments or present evidence for the first time when they could reasonably
10 have been raised earlier in the litigation.'").

## B. Analysis

Verinata did not serve CUHK with a copy of its May 30, 2014 discovery letter. In addition, at the time the Court issued its July 10, 2014 discovery order, CUHK had not been served with the complaint and summons in this action and had not yet formally appeared in the action. Therefore, under these unique circumstances, the Court concludes that it is appropriate to reconsider its July 10, 2014 discovery order and address the arguments made by CUHK in its motion for reconsideration.[3]

## II. Scope of the Waiver

In seeking reconsideration of the Court's July 10, 2014 discovery order, CUHK challenges the Court's determination of the scope of the attorney-client privilege waiver that occurred as a result of CUHK's disclosure of the February 26, 2007 email from Dr. Dennis Lo at CUHK ("the Lo Email"). Def.s' Mot. at 5-10. Specifically, CUHK argues that the waiver should be limited to the Lo Email itself. *Id.* In response, Verinata argues that the Court's prior holding was correct and that CUHK's disclosure

---

[3] However, the Court notes that although CUHK states in its motion that it was never served with Verinata's May 30, 2014 discovery letter, CUHK never affirmatively states that it was unaware of the discovery letter or the Court's order requiring a response to the letter by June 6, 2014. Moreover, even though CUHK was not effectively served with the complaint and summons until July 12, 2014, CUHK does not provide any explanation in its motion or reply brief as to why it could not specially appear in the action or intervene in the action to file a response to the May 30, 2014 discovery letter.

3

of the Lo Email during the interference proceedings constituted a broad subject matter waiver. Docket No. 219-4, Pl.'s Opp'n at 5-11.

### A. Legal Standard

"[P]re-trial discovery is ordinarily 'accorded a broad and liberal treatment.'" *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). "Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphasis added). A district court "has wide discretion in controlling discovery" and "will not be overturned unless there is a clear abuse of discretion." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

"The attorney-client privilege protects from disclosure confidential communications between a client and an attorney." *Theranos, Inc. v. Fuisz Techs. Ltd.*, No. C 11-5236 PSG, 2013 U.S. Dist. LEXIS 70564, at *3 (N.D. Cal. May 16, 2013). "The attorney-client privilege is intended 'to encourage clients to make full disclosure to their attorneys,' recognizing that sound advice 'depends upon the lawyer's being fully informed by the client.'" *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). The party asserting the attorney-client privilege bears the burden of showing that it applies and that the privilege has not been waived. *Id.* at 25.

The attorney-client privilege can be waived through an express or implied waiver. "An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (en banc).

"It is well-established that when a client discloses to another person the content of a privileged attorney communication, the resulting privilege waiver may extend beyond the communication itself to other related matter." *Wi-LAN, Inc. v. LG Elecs., Inc.*, 684 F.3d 1364, 1369 (Fed. Cir. 2012). Under Federal Rule of Evidence 502(a), when a "disclosure is made in a federal proceeding or to a federal

4

office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). "Enacted in 2008, [Rule 502(a)] limited the effect of waiver by strongly endorsing fairness balancing." *Wi-LAN*, 684 F.3d at 1369. "'[A] subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.'" *Theranos*, 2013 U.S. Dist. LEXIS 70564, at *4 (quoting Fed. R. Evid. 502(a) Advisory Committee Note (2011)). This fairness principle "is often expressed in terms of preventing a party from using the privilege as both a shield and a sword." *Bittaker*, 331 F.3d at 719; *see also Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009) ("'The privilege which protects attorney-client communications may not be used both as a sword and a shield.'").

**B.    Analysis**

    1.    <u>Whether the Waiver Was Intentional</u>

Dr. Lo, a professor at CUHK, voluntarily disclosed the Lo Email, which constituted privileged information,[4] to the PTO, a third party which was not bound by the privilege, during the interference proceedings in an effort to establish the priority date of his invention. Docket No. 207-2, Bosch Decl. Ex. 1; Docket No. 207 at 1, 4, 6. Thus, CUHK's waiver of the privilege was intentional. *See Bittaker*, 331 F.3d at 719.

---

[4] It is unclear from its motion whether CUHK is attempting to challenge whether the Lo Email constitutes privileged information. Nevertheless, the Court agrees with Verinata that the Lo Email is indisputably privileged information under Federal Circuit law. *See, e.g.*, *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805-06 (Fed. Cir. 2000) ("Accordingly, since Spalding's invention record was prepared and submitted primarily for the purpose of obtaining legal advice on patentability and legal services in preparing a patent application, we conclude that it is privileged in its entirety.").

5

### 2. Subject Matter

The Lo Email is an email from Dr. Lo directed towards outside patent counsel.[5] Docket No. 207-2, Bosch Decl. Ex. 1. Dr. Lo states that the email is a follow-up to a preliminary discussion he had with Ken Weber of Townsend regarding his intention to file a patent claiming "a digital PCR based method for noninvasive prenatal diagnosis." *Id.* at 4. In the email, Dr. Lo attaches a detailed 9-page description of his invention,[6] provides a brief description and a list of relevant prior art, and inquiries from outside counsel as to the patentability of the invention. *See id.* Dr. Lo also briefly discusses potential filing strategies in light of "time pressure from the Stanford competition." *Id.* at 4, 6.

A review of the email shows that its subject matter relates to the preparation of a patent application, the potential patentability of the invention, prior art, and filing strategies. However, the Lo Email does not contain any post-filing legal analysis or theories regarding the application, the invention, or prior art. Therefore, the Court concludes that the appropriate subject matter waiver should not include any post-filing communications. *See Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576-78 (N.D. Cal. 2008) ("There is a fundamental divide between patent drafting and patent prosecution that cannot reasonably be bridged by the extension of a waiver, at least on the facts in this case."). In addition, the Lo Email does not contain any draft claims. A patent application must include not only a written description of the invention, which is contained in the Lo Email; it also must include claims, which are not contained in the Lo Email. *See* 35 U.S.C. §§ 111(a)(2), 112(a), (b); 37 C.F.R. §§ 1.71-1.75. Therefore, although the Court concludes that the appropriate subject matter of the waiver should include any draft applications and any pre-filing communication related to the drafting of the applications, the waiver should not extend to the portions of those documents that contain draft claims.

---

[5] In its motion, CUHK mischaracterizes the email and contends that it is directed to only non-attorneys at CUHK. Def.'s Mot. at 3. In support of this contention, CUHK focuses on the names contained in the "To" and "Cc" fields of the email. *Id.* Although it is true that Alice Ngan is listed as the recipient of the email in the "To" field, Dr. Lo states in the body of the email that the purpose of the email is to provide "some detailed information for Ken[ Weber]'s perusal" and "to ask Ken with regard to the patentability of this work and what angle one should take." Docket No. 207-2, Bosch Decl. Ex. 1 at 4. Therefore, it is clear from the text of the email that Ken Weber, outside counsel at Townsend, was to be the ultimate recipient of the message. Accordingly, it is an email directed towards outside counsel, and Ms. Ngan was merely acting as an intermediary between Dr. Lo and Mr. Weber.

[6] CUHK concedes that this description of the invention was detailed enough to later be used to help draft a patent application. Docket No. 224, Def.'s Reply at 4.

6

*See Phoenix Solutions*, 254 F.R.D. at 577 ("Because Phoenix's voluntary production was limited to the specification portion of the applications which contained no patent claims, . . . the court will not order Phoenix to produce any pre-filing drafts of the claims themselves."). Accordingly, based on the information contained in the Lo Email, the Court concludes that the appropriate subject matter of the waiver is any drafts of the patent applications at issue in Interference No. 105,923 and any pre-filing communications related to (1) the drafting of the patent applications, (2) the prior art discussed in the Lo Email or its attachment, and/or (3) strategies for filing the applications. But, the waiver does not extend to the portions of the documents that contain any draft claims or to any post-filing privileged communications.

### 3. Fairness

CUHK argues that "fairness" does not require that the waiver extend to undisclosed communications because the PTO never reached the priority issue during the interference proceedings, and because Sequenom and CUHK have disavowed use of the Lo Email in this litigation. Def.'s Mot. at 8-10. The Court disagrees. CUHK used the Lo Email offensively during the interference proceedings in an effort to establish priority over the Quake patents. That the PTO never reached the priority issue or that Sequenom and CUHK have disavowed use of the document in this litigation does not change the fact that the Lo Email was used as a "sword" by CUHK against plaintiffs during the prior proceedings in an attempt to gain a tactical advantage in those proceedings.[7] Because the document was used as a "sword" in the prior proceedings, CUHK cannot now attempt to "shield" the remaining undisclosed communications that relate to the same subject matter. *See Kaiser Found. Health Plan*, 552 F.3d at 1042 ("'The privilege which protects attorney-client communications may not be used both as a sword and a shield.'"); *see, e.g.*, *Pacing Techs. v. Garmin Int'l, Inc.*, 2013 U.S. Dist. LEXIS 127041, at *13-14

---

[7] The Court finds CUHK's citations to *Dynetix Design Solutions, Inc. v. Synopsys Inc.*, No. CV 11-05973 PSG, 2013 U.S. Dist. LEXIS 97872 (N.D. Cal. Jul. 11, 2013) and *GATX Corp. v. Appalachian Fuels, LLC*, No. 09-41-DLB, 2010 U.S. Dist. LEXIS 129706 (E.D. Ky. Dec. 7, 2010) unpersuasive. In both cases, the district court declined to extend the waiver to undisclosed communications in light of the producing party's representations that it disavowed use of the privileged communications in the litigation. *See Dynetix Design Solutions*, 2013 U.S. Dist. LEXIS 97872, at *6; *GATX*, 2010 U.S. Dist. LEXIS 129706, at *17. However, there are no facts in either case showing that the privileged communications at issue had already been used offensively as a "sword" in a prior proceeding. Therefore, both cases are readily distinguishable from the present case.

7

(S.D. Cal. Sept. 5, 2013) (finding that fairness dictated that the plaintiff should produce all documents showing the preparation and finalization of a draft patent application because the plaintiff intended to use a draft application to establish a priority date). Accordingly, the Court concludes that "fairness" requires that Sequenom produce any allegedly privileged drafts of the patent applications at issue in Interference No. 105,923 and any allegedly privileged pre-filing communications related to (1) the drafting of the patent applications, (2) the prior art discussed in the Lo Email or its attachment, and/or (3) strategies for filing the applications.

## CONCLUSION

For the foregoing reasons, the Court GRANTS CUHK's motion for reconsideration. Accordingly, the Court VACATES the relevant portions of the June 10, 2014 discovery order and ORDERS Sequenom to produce any allegedly privileged drafts of the patent applications at issue in Interference No. 105,923 and any allegedly privileged pre-filing communications related to (1) the drafting of the patent applications, (2) the prior art discussed in the Lo Email or its attachment, and/or (3) strategies for filing the applications. Draft claims may be redacted from the draft applications and pre-filing communications that Sequenom is otherwise required to produce. In addition, Sequenom is not required to produce any post-filing privileged communications. This order resolves Docket No. 207.

**IT IS SO ORDERED.**

Dated: August 18, 2014

SUSAN ILLSTON
United States District Judge